RUDOLPH OPATRIL v. EDWARD E. COOK AND OTHERS. LESLIE WELTER, INTERVENER, RESPONDENT.[1]

June 8, 1923.

No. 23,363.

Right of chattel mortgagee superior to that of one supplying seed potatoes.

The plaintiff held a valid chattel mortgage on crops to be grown by the defendant mortgagor. The intervener furnished the defendant mortgagor seed potatoes for planting under an agreement whereby he was to deliver an equal quantity of a higher grade at the close of the cropping season. The intervener did not comply with the seed grain statute, G. S. 1913, § 6994, giving a lien upon "a loan or purchase of

[1]Reported in 194 N. W. 103.

seed grain," afterwards amended by Laws 1923, c. 48, so as to include in terms seed potatoes, and claims no statutory lien. It is *held* that he has no claim to the potatoes raised from the seed superior to that of the plaintiff.

Action in the district court for Clay county to recover $2,736.50 and to foreclose a chattel mortgage therefor. The case was tried before Nye, J., who made findings and ordered judgment in favor of plaintiff for the amount demanded, less the amount to be paid him by the receiver. From an order denying his motion to amend the findings and conclusions or for a new trial, plaintiff appealed. Reversed.

*Hammett & Morton,* for appellant.

*James A. Garrity,* for respondent.

DIBELL, J.

Action to foreclose a chattel mortgage on crops to be grown. A receiver was appointed. He harvested the crops and received the proceeds. They were insufficient to pay the plaintiff's mortgage. The intervener, Leslie Welter, furnished the mortgagor, the defendant Cook, seed potatoes under an agreement whereby he was to deliver to him an equal quantity of a higher grade at the close of the next cropping season. The court directed the receiver to pay to the intervener the value of the potatoes agreed to be delivered to him and the balance to the plaintiff. The plaintiff appeals from the order denying his motion for a new trial.

The plaintiff's mortgage was made on February 25, 1920, and was properly recorded. It covered the crops to be grown in 1920 and 1921. It was given to secure the rent of the land, and in such case the statute does not limit the lien to one crop.[1] The question is whether the intervener is entitled to priority through his furnishing of seed potatoes, by way of lien or otherwise. The potatoes were furnished under the following agreement:

[1] [See G. S. 1913, § 6980.]

Nov. 15, 1920.

"Received from Leslie Welter 24,000 pounds of No. 2 Early Ohio potatoes which I agree to plant and in return furnish to said Leslie Welter delivered at his warehouse in Hawley, Minn., 24,000 pounds of No. 1 Early Ohio potatoes in the fall of 1921.

(Signed) Edward Cook."

There is evidence that dealers accumulate what they call Number 2 potatoes, not suitable for consumption, which they put out as seed to the grower who agrees to return the same amount of a higher grade. The mortgagor produced from the seed a greater quantity of Number 1 potatoes than that furnished him by the intervener.

The intervener is not entitled to the relief granted. He has no common law lien. He has not against the plaintiff an equitable lien, nor one by contract, nor other claim. He does not claim a statutory lien under G. S. 1913, §§ 6994-6996, giving a lien for "a loan or purchase of seed grain." If seed potatoes were within the statute, still the intervener would be without relief under the statute, for he did not file his contract as the statute requires. It is not amiss to note that since the facts involved arose there has been an amendment to section 6994 expressly making its provisions applicable to seed potatoes. Laws 1923, p. 45, c. 48. Nor is the intervener entitled to relief against the plaintiff's mortgage upon the theory of a bailment of the seed. The case seems unlike one involving the delivery of property to be manufactured, where the identical property in its changed form is to be returned. It is unnecessary, for the purposes of this case, to inquire whether the contract would be satisfied by the delivery of potatoes of like grade grown elsewhere or from other seed, or whether if the seed failed to produce a sufficient quantity there could be an obligation to deliver the quantity specified. Whether the contract constituted a "loan" or a "purchase," within the statute giving a lien, is not important here. It is noted without comment that section 9 of the Uniform Sales Act provides that "the price may be made payable in any personal property." Laws 1917, p. 770, c. 465, § 9.

Order reversed.